Chief Judge Cooke
(dissenting in part). I dissent in part and vote that the order of the Appellate Division be affirmed.
It is agreed that summary judgment should be denied to plaintiff in respect to the claim of tortious interference with the order for locks, denominated as "Order No. 1001”.
Issue, however, is taken with that portion of the majority’s determination which grants summary judgment to defendant dismissing that part of the complaint relating to claims of tortious interference in respect to the underlying 1968 contract (apart from said numbered order). It is agreed that if that contract, granting Guard-Life an exclusive distributorship, was terminable at will, defendant’s competitive interference would be justified (Restatement, Torts 2d, § 768; accord, e.g., Terry v Dairymen’s League Co-Op. Assn., 2 AD2d 494, 500-501). The fact, however, is that the contract, though voidable, was for a definite term and prior to defendant’s interference was being performed by the parties.* It was not terminable at will. Being such a contract, the rules governing tortious interference with voidable contracts should be applied here. The majority’s failure to apply said rules is the touchstone from which this dissent springs.
It is undisputable that where an agreement is terminable at will, a competitor of one of the parties is free to use proper and legal means to induce termination (e.g., Terry v Dairymen’s League Co-Op. Assn., 2 AD2d 494, supra; Restatement, Torts 2d, § 768; Prosser, Torts [4th ed], § 129, at p 946). This privilege of competition exists because the contracting parties have no contractual right to have their "relation continued, but only an expectancy” (Prosser, at p 946). Such an expectancy of future relations has, from early common-law days, always been subject to competitive interference (see, e.g., Mogul S. S. Co. v McGregor, Gow & Co., 23 QBD 598, affd [1892] AC 25).
But, for present purposes, a voidable contract with a prescribed duration simply is not akin to a contract terminable at *199 will. Indeed, the Restatement of Torts Second, heavily relied upon by the majority, treats the two types of agreements differently. According to the Restatement, "the fact that the contract is terminable at will * * * is a factor to be considered in some cases in determining whether the defendant is free to interfere (see § 768, Comment j)” (Restatement, Torts 2d, § 766, Comment g [Tent Draft No. 23]; emphasis added). With respect to voidable contracts, however, the Restatement provides that the existence of a formal defect does not justify interference "with performance of the contract before it is avoided” (Restatement, Torts 2d, § 766, Comment f). Moreover, section 768 of the Restatement, which deals with the privilege of competition, expressly states that competition provides no justification for interfering with an agreement, "if the contract is not terminable at will” (Restatement, Torts 2d, § 768, subd [2]).
There are sound reasons supporting the distinction drawn by the drafters of the Restatement. Significantly, the expectations of the parties to a voidable contract, which is for a prescribed duration, differ substantially from the expectations of parties to a terminable at will agreement. The latter are usually aware, when they enter into the contract, that their relationship is to continue only so long as is mutually agreeable, and hence will refrain from relying on the agreement in planning future transactions. Parties to a voidable contract, on the other hand, believe that they have established a relationship which will span a period of time and may order their future conduct accordingly. Indeed, since the formal defect which renders the agreement voidable — such as a failure to comply with the Statute of Frauds or technical rules relating to mutuality — often does not surface except as a post hoc defense to an action for breach, the fact that the agreement is voidable is of little practical significance. From a pragmatic standpoint, then, parties to such a voidable contract are in a situation akin to parties to an enforceable agreement with a fixed duration.
Moreover, the nature of the conduct of one who interferes with a voidable contract does not differ from that of the person who interferes with an enforceable contract. In both cases, the wrongdoer is aware of the existing contractual relation, and chooses to intentionally interfere with it. In both cases, the contracting parties are performing their agreement, and expect the relationship to continue for a set period of *200 time. And, in both cases the wrongdoer has violated "the ethical precept that one competitor must keep his hands off of the contracts of another” (Prosser, Torts [4th ed], § 129, p 945).
In fact, it is this ethical precept which, at bottom, is the raison d’etre of the law of interference with contractual relations. If society were interested only in fostering economic competition, the tort of contractual interference would never have developed. Rather, the law would have allowed business entities to engage in unfettered competition, and relegated injured parties to a breach of contract action. But this is not the path that has been followed.
Instead, the law has decided, long ago, that enforcement of certain market morals is a societal interest worthy of protection. When these fundamental precepts are violated, the law provides a remedy. And the remedy, in form a tort action, exceeds that which would be available in a contract action. One who induces a breach of contract is liable, not just for contractual damages, but for all damages legally caused by the wrong (Restatement, Torts 2d, § 774A, Comment c; majority opn, at p 197, n 6). The form of the action and the measure of damages signals that more than economic interests are being protected. Contrary to the majority opinion, then, the interests involved here are not solely protection of contract rights versus freedom to compete. Rather, society’s weighty interest in insuring a minimum level of ethical behavior in the marketplace is directly implicated.
It becomes clear why voidable contracts must be distinguished from contracts terminable at will. When a competitor induces termination of a contract terminable at will, he commits no ethical violation, and does not produce a result contrary to the expectations of the parties. In such a situation, there is no basis for prohibiting competitive interference. By contrast, where a competitor induces a breach of a voidable contract, which was being performed and which was for a designated period, he not only violates an important ethical precept himself, but he induces the contracting party to abandon his ethical obligation to carry out the promise contained in the technically unenforceable agreement. In addition, since the parties did not intend to create a voidable contract, and were likely unaware qf the defect, the interferer has upset their expectaticns.
Finally, the majerity’s suggesticn that neither the subjective *201 expectations of the contracting parties nor the state of mind of the interferer are relevant factors is noted. It is precisely those factors which must be balanced in determining liability for interference with economic relations. As the Restatement puts it, "the plaintiffs interest in his contractual rights and expectancies must be weighed * * * against the defendant’s interest in freedom of action”. And, "the nature of [the interferer’s] conduct is an important factor” (Restatement, Torts 2d, § 766, Comment c). Indeed, the subjective expectancies of the contracting party are a major reason for permitting competitive interference with contracts at will, while not allowing it when a durational contract exists. In the latter instance, "the greater definiteness of the [contracting party’s] expectancy and [the] stronger claim to security for it” justify legal protection against interference (Restatement, Torts 2d, § 767, Comment e). In short, the subjective expectations of persons who enter into a contract are important considerations when evaluating whether a third party is free to interfere with the ongoing contractual relationship. A view that would make liability turn upon the circumstance that the contract might be voidable — without regard to the interests involved — would exalt form over substance.
To uphold contracting parties expectations, and to protect the society’s interest in assuring a level of market morality, I would adopt the formulation of the Restatement, and hold that the privilege of competition only justifies interference with an at will and not a voidable contract.
Contrary to the implication of the majority, then, the wrongfulness of the act of the interferer in respect to a voidable contract need not rise above "intentional interference, without justification”, with the contractual rights of another, with knowledge of the contract (see, e.g., Campbell v Gates, 236 NY 457, 460). Accordingly, Guard-Life need only show that defendant intentionally interfered with its contractual rights, without justification and with knowledge of the contract to make out a cause of action. Having produced ample evidence in substantiation, but there being a true factual question as to the intentional interference, summary judgment should be denied in this respect.
Accordingly, affirmance is in order.
Judges Jasen, Wachtler and Meyer concur with Judge Jones; Chief Judge Cooke dissents in part and votes to affirm *202 in a separate opinion in which Judges Gabrielli and Fuchs-berg concur.
Order modified, with costs to defendant, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.

 The contract was found to lack mutuality in a Japanese arbitration proceeding and plaintiff Guard-Life is bound by that determination. A contract may be voidable because of lack of mutuality (Restatement, Torts 2d, § 766, Comment f). The question whether the contract would be enforceable in New York need not be reached (see Prosser, Torts [4th ed], § 129, p 932).